## Lawson et al. v. McNeil et al.

(Decided Feb. 19, 1937.)

HIRAM H. OWENS for appellants.

TUGGLE & TUGGLE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 15, 1933, the appellants, Ellen D. Lawson and her husband, G. B. Lawson, filed this equity

action in the Knox circuit court against appellees and defendants below, Addie McNeil, Glendon McNeil, and Pittman Jackson, seeking to enjoin them from trespassing on a described tract of land which plaintiff, Ellen D. Lawson, alleged in the petition that she owned. The petition sought the recovery of damages for trespasses already committed, an injunction to prevent future ones, and the removing of a cloud upon the title to a portion of plaintiff's premises because of the alleged wrongful claim of title thereto by defendant, Addie McNeil. Neither litigant asserted or attempted to establish title by adverse possession—both of them relying upon record title from the commonwealth. The court upon submission, after extensive proof taken, determined that the small amount of land involved belonged to defendant, Addie McNeil, and dismissed plaintiff's petition, to reverse which they prosecute this appeal.

The storm center of the controversy is around the proper location of a 34-acre patent issued by the comonwealth to John Black on December 11, 1825, as the assignee of John Slaughter, who surveyed and made entry of the tract on November 20, 1810. Slaughter had previously patented 200 acres of land lying south of the 34-acre tract and supposedly contiguous to it. Defendant, Addie McNeil, claimed title under and through a 50-acre survey and patent, the latter of which was issued to John McNeil on April 6, 1835. He (McNeil) also obtained a second patent for another 50-acre tract lying immediately north of the first one. One John Logan purchased all of the interests in the lands mentioned, surveyed, or patented by Slaughter (being both the 200 and 34-acre patents) from John Black, and he was the owner of the combined tracts at the time McNeil obtained his first 50-acre patent lying supposedly north of and contiguous to the 34-acre one. On June 24, 1836, he (John Logan) instituted in the Knox circuit court against John McNeil (the patentee of the 50-acre tract lying immediately north of the 34-acre one) an action of trespass quare clausum fregit, claiming that the defendant in that action was wrongfully trespassing upon the same contested land involved in this action, as we gather from the records of the case, and which the proof in this case shows without contradiction. After the making of the

issues in that venerable trespass action it was dismissed settled at the cost of defendants therein. Later Cogar Logan, the son of John Logan, became the owner of all of his father's interests in both the 200 and 34-acre patents, and the proof uncontradictedly shows that both his father and himself, from the time of the dismissal of the ancient trespass action, recognized the McNeil line as contended for by defendants in that trespass action as the true line separating the 34-acre patent from the first 50-acre McNeil patent. The proof on that issue is without contradiction.

Defendants plead and specially rely on the judgment, or final disposing order of the old trespass action supra, as a bar to this one, since all requisites for a judicial estoppel exist so as to bind the parties hereto if that judgment or order was of the nature and kind to constitute a judicial estoppel. Only the pleadings and the order itself are brought to this court by the instant record. The pleadings show a clear contest over the title of the disputed land involved in that trespass action. The final order putting it off the docket reads: "The parties aforesaid (whose names are stated in the caption) appeared in court and by agreement, this suit is dismissed at the cost of defendants, except the attorney's fee, which is not to be taxed." It is not altogether clear as to whether that order, standing alone as it does, evidences a disposition of the questions involved on the merits so as to meet the requirements of a judicial estoppel, although the actions of the parties after it was made indicate that they so interpreted it. Because of the meagreness of the record of that case, as so brought to us, and because it is deemed to be unnecessary for other reasons hereinafter stated, we have concluded not to determine the sufficiency of that defense as an estoppel.

In the preparation of this action the parties introduced several surveyors and those introduced by plaintiffs endeavored by their surveys to locate the 34-acre patent as entirely north of the 200-acre Slaughter patent, and so as to extend it north over a portion of the later first 50-acre McNeil patent; which, if correct, would defeat defendants' title herein to the contested portion of land, since their title would then be invalid to the extent of the lap of the 50-acre patent upon or

over the 34-acre one. On the other hand, the professional testimony introduced by defendants locates the various patents differently, and so as to create no lap of the first McNeil 50-acre patent on and over the 34-acre one, and the court so found as a basis of its judgment. That finding is based, as we gather from the record as well as from arguments, not only upon the testimony of defendants' surveyors, but also on intermediate court ordered surveys in making a division of some of the land in the intervening time between the issuing of the patents and the acquisition of title by the immediate parties to this litigation.

The division made during that time was by a surveyor who filed a map in the action brought for the purpose of making the division, and it coincides with the ones made and filed by defendants' surveyors as to the line between the 34-acre and the first McNeil 50-acre patents. A number of witnesses of more or less advanced age, who resided in the neighborhood and possessed familiarity with the location of the lands therein, testified for defendants, and they all stated that the line now contended for by defendants in this action has been recognized by the various owners of the two tracts (34-acre, and first McNeil 50-acre patent) since the dismissal of the old trespass action between John Logan and John McNeil.

By an ingenious method of surveying (the reversing of calls, lengthening of lines, etc.), plaintiff's two professional witnesses (one of whom was closely related to them) endeavored to locate the 34-acre patent so as to embrace the small portion of land in contest. To do that it was and is necessary for it to extend sufficiently north and lap over the first McNeil 50-acre patent so as to embrace such contested portion. Their testimony, however, is not altogether convincing, as easily could be pointed out by a detailed analysis of it. But such a task would be more or less stupendous, and would require a discussion of many lines, as well as corners, including the location of lost corners and the reasons why they are claimed to be lost, all of which is gone into in detail by the testimony of the surveyors. The same comment is applicable with reference to the testimony of professional witnesses for defendants. Such detailed discussion could be of no service

to any one—not even to the profession as an aid in solving future litigated questions of a similar nature—while to do so and compare the testimony of the professional witnesses—followed by reasons for discarding some and accepting other parts of it—would lengthen this opinion far beyond due bounds without accompanying compensatory benefits to any one. We have, therefore, concluded not to enter upon that task. Aside, however, from the judgment being supported by the testimony to which we have referred, we have the outstanding and undisputed fact that the two owners of the respective tracts of land more than 100 years ago appear to have settled the controversy over the true location of the division line between the two tracts described in the 34-acre Black patent and the 50-acre McNeil patent, and each successive owner appears to have recognized such settled location as being the correct one from that time until plaintiff, Ellen Lawson married her present husband, G. B. Lawson. The latter soon discovered the alleged wrong being perpetrated upon his wife by defendants, and which if true had been unobserved by prior owners of his wife's land for a period of practically 100 years. Such acquiescence in the true location of the division line is a most persuasive fact in support of the court's judgment. Moreover, many declarations of Cogar Logan while he owned the land now owned by plaintiff, Ellen Lawson, recognizing the line agreed upon and to which reference has been made, were proven and nowhere contradicted.

This is an equity action, and unless we entertain more than a doubt as to the findings of fact by the chancellor trying the case it is our duty to give our approval thereto, and which rule is thoroughly established and universally applied in this jurisdiction. The proof as a whole fails to convince us of the incorrectness of the trial court's judgment. On the contrary, we conclude, it was in accord with the preponderance of the testimony, and being so, there are no grounds for disturbing it.

**Wherefore, for the reasons stated, it is affirmed.**