## Craddock v. Kaiser et al.

Nov. 21, 1939.

J. Leonard Walker and D. A. McCandless for appellant.

Dodd & Dodd for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On April 3, 1937, Robert Kaiser and Florence Kaiser, his wife, as parties of the first part, and J. E. Craddock, as party of the second part, entered into a written contract whereby in substance it was agreed that the first party would sell and the second party would buy a house and lot located at 733 Western Parkway in Louisville for which the second party agreed to

pay the sum of $8,500 by way of assumption of a mortgage of $7,146 on the property in favor of the Federal Housing Administration, making the net cash price $1,354. The first parties agreed to put the house in as good condition as it was prior to the 1937 flood within 30 days which condition was to be satisfactory to the second party. The second party made a cash payment of $250.

The more pertinent portions of the contract read:

"In consideration of which parties of the first part agree to deliver to the party of the second part a general warranty deed to said property when and as the whole of said net purchase price is paid.

"* * * That the party of the second part forthwith in order to make this agreement binding, agrees to pay to the parties of the first part the sum of $250.00 in cash, and the balance of $1104.00 upon the receipt of said deed to said property from the said parties of the first part, and upon the said property being in the condition it was prior to the 1937 flood and satisfactory to the second party.

"In the event the first parties fail to comply with the terms of this agreement, or through no fault of the second party, the Federal Housing Administration refuses to assent to the assumption of the mortgage in the amount of $7146.00, or that the property has been misrepresented in any respect as to other liens, taxes, etc.; it is understood that the $250.00 payment is to be forthwith returned to the second party and this agreement null and void."

On May 6, 1937, J. E. Craddock instituted this action against Robert and Florence Kaiser asking for rescission and cancellation of the contract and for judgment for the sum of $250 which he had paid thereunder with interest from April 3, 1937. In his petition he set up the substance of the provisions of the contract and filed same with and as a part of his petition and alleged that he was induced to enter into the contract by representations of the defendants that the property was free from encumbrances except the mortgage in favor of the Federal Housing Administration although the defendants knew it was encumbered by another mortgage executed by defendants on March 19, 1937, in favor of the Disaster Loan Corporation to secure the payment of $1350 with interest and which was wholly unsatisfied;

that it was further represented to him by defendants that the payments on the mortgage in favor of the Federal Housing Administration was $60.54 per month including payment on the anticipated assessment for the 1938 state and county taxes, but that the defendants at the time knew that the payments on the mortgage and taxes would be increased after January 1, 1938, to an additional $14 per month and that plaintiff would have to pay an additional tax of $125 on increased assessment of the house on or about January 15, 1938. He further alleged that the house was not in the same condition as it was prior to the 1937 flood and the condition was not satisfactory to him but was wholly unsatisfactory; that the defendants had wholly failed to perform their part of the contract in that respect; that relying on the representations and the agreement of the second parties to place the house in as good condition as it was prior to the 1937 flood within 30 days, he paid the defendants the sum of $250 mentioned in the contract.

By answer and counterclaim defendants in the first paragraph traversed the allegations of the petition and in a second paragraph asked for specific performance of the contract alleging that they had complied with all the terms and conditions thereof.

The affirmative allegations of the pleading were traversed by reply and it was adjudged that plaintiff's petition be dismissed in its entirety; that defendants be granted the relief sought and that defendants were obligated to deliver to plaintiff a deed which carried a general warranty fee simple title to the property in controversy, but not until plaintiff tendered to them the purchase price as provided in the contract less the amount of the mortgage on the property to the Federal Housing Administration as reduced by payment made thereon by defendants since April 3, 1937, in the sum of $746.60, or $2100.60, less the payment of $250 made by defendant or an actual balance due defendants in the sum of $1850.60 that plaintiff have a period of 30 days from the entry and signing of the judgment to tender such sum of $1850.60 to defendants at which time defendants should deliver to plaintiff a general warranty deed; that defendants have judgment for the sum of $1850.60 and unless same was paid or tendered by plaintiff before the expiration of 30 days from the entry and signing of the judgment, execution might issue and that defendants recover their costs and plaintiff is appealing.

It is first argued as grounds for reversal that the residence was not restored to as good condition as it was prior to the 1937 flood and was not reasonably satisfactory to appellant. There is evidence for appellant that the house was built over or near a large sewer that had been constructed many yars before; that where the house stood there was a depression which had been filled in to raise it to the present level; that flood water of 1937 stood over the property for several days and so softened the built-up earth as to cause the house to settle and throw the floor out of level and the walls out of plumb and caused large cracks in the brick veneer walls and as a result the house had not and could not be put in as good condition as it was before the flood. On the other hand the evidence for appellees conduces to show that the footings or foundation walls of the building are on original and solid earth; that the floors and walls of the basement are of concrete reinforced and tied with steel; that there has been no settling or sinking of earth under the building but that the floors are level and the walls plumb; that there is a small or what is described as a hairline crack in one of the brick veneer walls but that it is of no consequence and in no way impairs the building; that the house is in as good if not better condition than it was before the flood and had been placed in such condition before the expiration of the 30 days as provided in the contract. Mr. Kaiser testified that appellant came over several times while he was working on the house and about a week before May 3, 1937, said he did not want the house but wanted his money back and was going to sue if it was not returned; that he made no mention of the Disaster Loan Corporation mortgage but said that he could not make the payments in view of the fact that he would have to buy furniture for the house; that at the time he had the property fully repaired and in good shape, and was hanging two venetian blinds which was all that remained to be done.

While, as will be seen, there is a sharp conflict in evidence on those issues it may be said without going into further detail there was ample evidence on which to base a conclusion that appellees had complied with their contract with respect to restoring the property to its former condition before it was damaged by the flood.

It is further argued that appellees misrepresented the nature of taxes covered in the amortization pay ments and the liens upon the property; and concerning

582

that contention we are confronted with an equally sharp conflict in evidence. Appellant's evidence tends to support the allegations of the petition in this particular but the evidence for appellees was to the effect that appellant was told that the monthly installments including the taxes might be increased because of increased assessments but that they did not know and could not tell the exact amount the payments would be increased; that appellant was also told that appellees had procured the disaster loan to rehabilitate the property.

While the finding and judgment of a chancellor in equitable actions does not have the same weight as the verdict of a jury and the appellate court in such cases may and does consider and weigh the evidence for the purpose of determining whether the judgment or finding is in accord with the evidence, it is a firmly established doctrine that the court of appeals will give weight to the findings of fact made by the chancellor and will not disturb or interfere with such findings unless they are manifestly against the weight of evidence; and especially so where as in this instance the evidence was given orally before the chancellor and he heard and saw the witnesses and thus was better able to judge as to their credibility and the weight to be given their evidence. Mullins v. Patrick, 229 Ky. 195, 16 S. W. (2d) 1018; Mayhew v. McGlothin, 269 Ky. 184, 106 S. W. (2d) 643; Hutchins v. Foley, 271 Ky. 104, 111 S. W. (2d) 586; Keeton v. Owens, 228 Ky. 522, 15 S. W. (2d) 487. And where on the whole the evidence to the contrary creates no more than mere doubt as to the correctness of the chancellor's judgment it will not be disturbed. Jones v. Kentucky Glycerine Co., 226 Ky. 676, 11 S. W. (2d) 713; Jones v. O'Connell, 237 Ky. 219, 35 S. W. (2d) 290; Lawson v. McNeil, 267 Ky. 297, 102 S. W. (2d) 42.

It is further asserted by appellant that the time of performance is expressly made the essence of the contract and that since appellees did not make and tender deed to appellant within 30 days prescribed in the contract the court erred in adjudging specific performance. This argument apparently overlooks and disregards the fact that appellant himself was derelict in not paying or tendering payment of the cash balance due under the contract before the expiration of 30 days, although appellees had notified him in writing to do so and that they were ready to make the deed to him. It is obvious

that this contention is not well grounded and that appellant is in no position to urge it.

Counsel for appellant further maintain that the contract is unilateral and wanting in mutuality because under the quoted provisions it could be avoided by appellees by their failure to comply with its terms. Clearly the contract is not susceptible of such construction; however, if it were, the evidence indicates as was found by the chancellor that appellees had performed the conditions thereof. It is a general rule that a contract is not void or lacking in mutuality where the party who is not bound has performed the conditions of the contract. Pennagrade Oil & Gas Company v. Martin, 211 Ky. 137, 277 S. W. 302, and authorities therein cited.

Some other questions of minor importance are argued by appellant but the matters complained of were brought about by appellant's own failure to comply with the contract.

It is our conclusion that the chancellor correctly determined the right and equities between the parties and that his judgment should be and is affirmed.