## Crook et ux. v. Feller et ux.

June 16, 1942.

Charles Ferguson for appellants.

C. A. Pepper for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On October 20, 1937, Karl Feller and Emily Feller, his wife, loaned to S. L. Crook the sum of $5,000, and the latter executed and delivered to the former his promissory note in the same amount, due and payable one year after date, and delivered to the payees as collateral security for the payment of the note 200 shares of the capital stock of the S. L. Crook Corporation, and, in addition thereto, executed and delivered to them a mortgage on a certain tract of land in Caldwell county, Kentucky, in which his wife, the appellant Mrs. S. L. Crook, joined. At the time of the execution and delivery of the note and the collateral security, the parties entered into a written agreement, which was made a part of the note

and contract, whereby it was agreed that in the event the Fellers desired to retain the 200 shares of stock in the S. L. Crook Corporation placed with them as collateral security for the payment of the note, they might do so upon the terms and conditions set out in the agreement, which reads as follows:

"Made By S. L. Crook in favor of Karl Feller and Emily Feller, his wife.

"It is hereby stipulated and agreed by and between Karl Feller and Emily Feller, his wife, and the said S. L. Crook that in the event the said Karl Feller and Emily Feller, his wife, at the maturity date of the said collateral note, to-wit, one year from October 20, 1937, desire to retain the 200 shares of the S. L. Crook Corporation, placed with them as collateral security for the payment of Five Thousand ($5,000.00) Dollars, advanced to the said S. L. Crook, that the said Karl Feller and Emily Feller, his wife, shall have the right to retain said stock as their absolute property, upon condition that they pay therefor at that time the sum of Ten Thousand ($10,000.00) Dollars, regardless of what the then value of said stock may be.

"It is agreed that in the event the said Fellers desire to retain said stock, that the said sum of Ten Thousand ($10,000.00) Dollars shall be paid in the following manner: To cancel the collateral note attached hereto and to return to the said S. L. Crook, the bond and mortgage upon the 123 acres of land, more or less situate in the State of Kentucky, and to mark said mortgage 'Satisfied in full' upon the proper records of Caldwell County, State of Kentucky. In addition thereto, the said Fellers shall pay to the said S. L. Crook the sum of Five Thousand ($5,000.00) Dollars in cash.

"In the event that the said Fellers do not desire to purchase said stock at the expiration of one year from October 20, 1937, it shall then be the duty of the said S. L. Crook to pay to them the face amount of said note, with interest, in which event, the said Fellers shall return said stock and bond and mortgage, and mark the same 'Satisfied in full' as aforesaid."

The note was not paid at maturity, nor was there

any settlement made between the parties nor any definite action taken in reference thereto until March, 1940, when the Fellers brought this action in the Caldwell circuit court to recover of S. L. Crook the amount of the note, with interest, and asked to be adjudged a lien against the collateral security and mortgaged real estate and that same be sold in satisfaction of the debt, interest, and costs. The defendants filed their answer, the first paragraph of which was a traverse, and by the second paragraph they pleaded affirmatively that the note had been paid and settled, and that pursuant to the contract between the parties plaintiffs agreed to pay defendant S. L. Crook the sum of $10,000 for the 200 shares of stock in the S. L. Crook Corporation to be paid by $5,000 advanced to S. L. Crook as evidenced by the note set out in the petition, and the further sum of $5,000 in cash to be paid by plaintiffs to defendant S. L. Crook at the maturity of the note; that when the note became due plaintiffs, desiring to purchase the stock at the agreed price of $10,000, held the same without making any demand of defendant to pay the note at once, and when defendant S. L. Crook was in Pittsburgh plaintiff Karl Feller promised and agreed that he would pay him the balance due on the sale to him of the 200 shares of stock, and that defendant agreed for plaintiffs to delay the payment of the sum of $5,000 to him until such time as plaintiffs deemed it convenient to make such payment; that Karl Feller agreed that when he paid the balance of $5,000 due on the stock he would return to defendant S. L. Crook his note for $5,000, and would cancel the mortgage on the land. The affirmative allegations of the answer were controverted by reply. Later, after the proof had been taken, defendants filed their amended answer and counterclaim in which they set out the same facts affirmatively pleaded in the original answer, and averred that through an oversight and mistake on the draftsman of their original answer it was not styled "Answer and Countercleim," and it failed to ask for the recovery of $5,000 over and above the amount sued for by plaintiffs and failed to pray for judgment over and against the plaintiffs for the sum of $5,000 as the balance of the purchase price of the stock. They prayed that their answer and the amendment thereto be treated as a counterclaim against the plaintiffs, and that they recover judgment for the sum of $5,000, with interest from October 20, 1938, until paid. On the submission of the case the chan-

cellor rendered a judgment for the plaintiffs in the sum of $5,000, the amount of the note, with interest thereon from October 20, 1937, and dismissed the defendants' counterclaim. The defendants appeal.

The evidence of Karl Feller tends to sustain all the allegations of the petition. He said he loaned defendant $5,000 and that 200 shares of stock were posted as collateral security and that he only had the right or option to purchase the 200 shares of stock at the maturity date of the note, but that he never exercised his option to purchase the stock and never agreed at any time that he would take the stock; that he made demand on defendant S. L. Crook for payment of the note, but no part of it had been paid and defendant still owed him the entire amount of the note, with interest from the date thereof. Plaintiff introduced and filed with his deposition a letter written to him by defendant dated Noverber 21, 1939, concerning interest that the S. L. Crook Corporation owed plaintiff on a note which the S. L. Crook Corporation had executed to the Federal Reserve Bank of St. Louis and which had been assigned to plaintiff. The letter contains a postscript which reads:

"I will take care of my little personal affair between this and the first or sooner, of January, that is interest. We no doubt will be able to clear the slate by another year."

"Yours,

"Crook"

Plaintiff said that the only little personal affair that could possibly be meant by the postscript was the loan of $5,000 to defendant, and that defendant referred to his individual loan as a "personal affair." On November 27, 1939, plaintiff wrote S. L. Crook a letter in regard to certain business affairs, but which contained this reference to the note in controversy and to defendant's postscript in the letter referred to above:

"With reference to the postscript in your letter intimating your willingness to take care of the 'interest of your little personal affair' on or before January 1, 1940, this is to again bring to your attention the fact that you are in default on this note of $5,000.00 for more than one year and that you have paid no interest thereon whatsoever. Does your postscript mean that you will pay the note and interest on or before January 1, 1940?"

On November 30, 1939, plaintiff wrote defendant another letter containing this paragraph:

"You owe me principal and interest on your note of October 20, 1937, the amount of which is $5,000.00. The interest past due on this is $600.00 up to October 20, 1939. It would seem to me better in every respect that you meet this older obligation by making out one check for the interest up to October 20, 1939, in the amount of $600.00 and another check either for the entire amount of $5,000.00 which is long past due or for as high a partial payment as you are capable of."

Plaintiff only introduced copies of letters which he had written to defendant, but he stated that he sent the originals to defendant by registered mail and that defendant signed receipts for the letters and he had the receipts in his possession which he filed. Plaintiff further stated that defendant ignored all of these letters. W. A. Schumann, who was called as a witness for plaintiffs, testified that he, as agent for defendant S. L. Crook, got in touch with plaintiff for the purpose of borrowing from him money for the defendant, and that the $5,000 loan in question was made as a result of his negotiations with Karl Feller. He said that Feller made personal demand on S. L. Crook for payment of the note when Feller "came up on various occasions," meaning when he came to Pittsburgh. S. L. Crook testified that on several occasions, before and after the maturity of the $5,000 note, when he was in Pittsburgh, Pennsylvania, Karl Feller told him he intended to keep the 200 shares of stock and pay the additional $5,000 therefor. He stated that the postscript to his letter of November 21, 1939, referred to a loan of $200 to Schumann to pay expenses incurred by Schumann for him. He admitted that he had not executed a note to Feller for the $200 and if the latter had a note it had been executed by Schumann. In view of the large sums of money involved in the dealings between the parties, it is unreasonable to believe that Crook in his letter of November 21, 1939, was referring to the interest on $200 when he said he would take care of the interest before the first of the year or that he was referring to the $200 obligation when he spoke of clearing the slate by another year. If, as he claims, Feller was then indebted to him in the sum of $5,000 and had been so indebted for more than a year for the 200

shares of stock in the S. L. Crook Corporation, it is strange that he would promise to pay Feller the interest on a $200 debt before the first of the year and the principal "by another year." Schumann was the only witness introduced other than Mr. Feller and Mr. and Mrs. Crook.

Appellants insist that the evidence establishes conclusively that Mr. Feller elected to retain the collateral stock of 200 shares, and that the note and mortgage should be canceled and appellees required to pay appellants $5,000. The testimony is in direct conflict. The agreement of October 20, 1937, merely gave an option to Feller. He testified positively that he did not exercise it, but, on the contrary, continuously demanded payment of the note. Mr. and Mrs. Crook testified to the contrary with equal positiveness. The testimony of Schumann, apparently a disinterested witness, tended to corroborate appellee Feller. Some of the correspondence between the parties strongly supports the appellees' contention that they did not elect to retain the 200 shares of stock. A careful examination of the record convinces us that the chancellor's finding of fact is sustained by the preponderance of the evidence. We do not reverse the decree of a court of equity on a finding of fact unless it is against the weight of the evidence. Craddock v. Kaiser, 280 Ky. 577, 133 S. W. (2d) 916; Cincinnati Finance Co. v. Atkinson's Adm'r, 275 Ky. 828, 122 S. W. (2d) 977.

The appellants further insist that the pleadings do not authorize a judgment for the appellees because (1) the petition failed to allege a promise to pay the note; and (2) no reply to the amended answer and counterclaim was filed, and, consequently, the allegations therein are confessed. The note was filed with the petition, and the defendants did not file a demurrer. The defect in the pleading, if any, was cured by the judgment. Catron v. Jones, 281 Ky. 163, 135 S. W. (2d) 419; Brewer v. Terrill, 275 Ky. 756, 122 S. W. (2d) 749. The affirmative allegations of the answer were controverted by reply. The amended answer contained no new allegations, but was filed merely for the purpose of having the answer theretofore filed styled "Answer and Counterclaim." The material averments had already been traversed, and issue had been joined.

The judgment is affirmed.