## Mitchell v. Simms et al.

Oct. 9, 1943.

Raymond Connell for appellant.

Bradley & Blanton for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant and appellees, the latter respectively the widow and stepdaughter of Edward F. Simms, deceased, were defendants in a suit filed by W. E. Simms, (Kentucky) administrator, against creditors and other parties seeking to determine certain matters involving the E. F. Simms' estate. Appellant came in by way of answer and cross-petition as against appellees, setting up a claim based on three prommissory notes executed by Edward F. Simms, dated February 6, 1931; the first due in six months, the second in nine months, the third in one year, all payable at a bank in Houston, Texas, and defaulted on presentation.

The appellees called upon the administrator to make defense and specifically to set up a plea of limitations according to the laws of Texas and Ky. Stats. sec. 2542. The administrator declined because of lack of knowledge or inability to obtain facts or information. An agreed order permitted appellees to interpose all available defenses. The issue was raised by reply of appellees to the pleading of appellant, in which they said that the notes were executed in Texas February 6, 1931, and Mitchell's answer was filed June 31, 1939, more than eight years after maturity of each note. They relied upon the following provision of the Civil Statutes of Texas:

"Art. 5527. There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

"Art. 5539. When an action may appear to be barred by a law of limitation, no acknowledgement of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgement be in writing and signed by the party to be charged thereby."

They also plead Ky. Stats. sec. 2542, KRS 413.320: "When a cause of action has arisen in another state or country between residents of such state or country or between them and residents of another state or country, and by the laws of the state or country where the cause of the action accrued an action can not be maintained

thereon by reason of the lapse of time, no action can be maintained thereon in this state.''

It is undenied that the notes were delivered at a time when Simms and Mitchell were residents of Texas, and it appears Simms died a resident of Texas in December, 1938, and thereafter an executor qualified and was at the time of pleading acting, and that Mitchell did not present his claim to that executor. A rejoinder to reply, insofar as the issue here is concerned, denied the allegations, Mitchell asserting the suit in the Bourbon county court, in which certain transactions of Simms had been assailed by the administrator, and in which he had presented his claim in accordance with the laws of this State. He admitted that the ''cause of action accrued in Texas,'' but alleged that the action was not barred by the Texas statute because after the accrual and up to the time of his death Edward Simms absented himself from and was without the limits of the State during the time in which he might have maintained suit and for periods of time aggregating four years. In avoidance of the statutes, supra, he relied on sec. 5537 of the Texas Statutes: ''If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence * * * shall not be accounted or taken as a part of the time limited by any provision of this title.''

A surrejoinder completed the issue and it was agreed by parties that the cause should be submitted on the issue as to whether or not collection of the notes was barred. The burden of proof was placed upon appellant without objection. The court adjudged that the notes were executed in Texas at a time when both parties were residents of Texas, and likewise at the time of Simms' death, and that Simms was not without the State in the aggregate for the period of four years, and dismissing appellant's pleading.

Appellant correctly states in brief that ''the sole question presented is whether or not E. F. Simms was in the State of Texas subject to the jurisdiction of the courts thereof for a period of four years or more from

the maturity of each note until the time of his death.''
A great many matters are discussed in brief which throw
no light on the legal question, and we shall as far as
possible refrain from any discussion. However, a brief
recital of the situation in which Mr. Simms found him-
self, particularly prior to and perhaps shortly after
the execution of the notes, may not be amiss. Mr. Simms
was at one time a wealthy citizen of Kentucky. While
it does not necessarily enter into the legal aspects of
the case, it is shown that in 1930, or prior thereto, Mr.
Simms became financially embarrassed, due in part to
the fact that the Federal Government was asserting
a lien against his diversified properties to secure col-
lection of a million or more dollars for claimed excess
profit taxes, and authorities had filed lis pendens against
his properties in Kentucky, New York and Texas. Mr.
Simms had theretofore through a trustee conveyed his
farm to his wife and turned over to appellees his per-
sonal properties. W. E. Simms was appointed Ken-
tucky administrator in April 1939, and brought suit
seeking to have the court determine the title to the
various properties to have been in decedent at the time
of his death, as against the claim of title in appellees.
It is not necessary to go into a lengthy discussion of
this phase of the matter, since it may be reasonably
gathered from the record that the government was
satisfied and other obligations met. It may not be out
of the way to say that Mr. Simms had completed de-
velopments of his various oil properties prior to the
execution of the notes sued on. Much of the evidence
on the vital question relates to his movements and ac-
tivities when he had numerous irons in the fire.

(1) In order to clarify the issue we may repeat
some of the admitted facts. All the notes were exe-
cuted February 6, 1931, due respectively in six, nine
and twelve months. While appellant in brief makes
it appear that all the notes matured in August 1931
the fact is they accrued respectively on the sixth day
of August and November, 1931, and February, 1932.
Under the Texas law the holder could have instituted
suit at the dates of the respective maturities. Koethe
v. Huggins, Tex. Civ. App., 290, S. W. 790.

Appellant testified that on several occasions he
had discussed with Mr. Simms renewal of the notes,
while apparently after maturities he does not fix the

time of these several discussions, and insofar as his knowledge of Simms' whereabouts during the period involved is concerned, his testimony is vague and uncertain, and does not show that Mr. Simms was for any given period beyond the confines of the State of Texas. Two process servers, or deputy sheriffs, testified for appellant. The sum and substance of their testimony was to the effect that at least during some part of the period involved they had returned unexecuted many processes directed against Mr. Simms. They had visited the office which he maintained in Houston when the office force informed them that Mr. Simms was out of the State. One or both expressed the opinion that Mr. Simms was evading service of process. One, however, succeeded in doing service by watching the elevator or while Mr. Simms was strolling around his estate. The general trend of their testimony was to the effect that Mr. Simms during these attempts to secure service was, as they were informed, out of the State. Neither of the officers claim that they ever undertook to do service of process issued in a suit instituted by appellant, nor does it appear that such suit was begun.

Mr. Kennedy, an oil broker and Mr. Lane, both knew Mr. Simms; they had business relations with him. They were also creditors of Mr. Simms, Mr. Kennedy testifying in 1941, said that he had undertaken to contact Simms frequently; he said that during "the last ten years I probably caught him in his office about four times." He said that from August 6, 1931, to the time of his death "he spent very little of his time in Texas," but he would not venture to say how long he had remained out of the State. He would say that Simms during the period was "away from the State three and a half years, but I would say he was not in Houston over twice during that period." He filed suit in 1936, and while there was some delay he succeeded in having process served. He said that Mr. Simms, during 1933 and 1934, spent very little time in Houston; he was mostly in New York and Kentucky; "he spent not more than three months in Houston." Letters and telegrams he exhibited merely showed that Mr. Simms was in Kentucky on two certain dates and in New York on another.

Mr. Sandifer was in the employ of companies in which Mr. Simms was interested from 1912 to 1937.

He contacted the office "regularly and irregularly." He said Simms had a large number of interests in and out of Texas; "he seemed to be traveling most of the time, back to office and leaving again." Giving his estimate from observation, information and recollection, he said that Mr. Simms spent about three-fourths of his time out of the State. He was asked to explain his answer, and said that what he had intended to say was that "Mr. Simms might have been out three-fourths of the time. I don't know where he was." He reduced his estimate of the period of absence to "one-half his time."

Appellant also took the deposition of S. M. Millican. He testified that he had made a chart based on letters, telegrams, telephone calls, etc., showing the dates when Mr. Simms was absent from the State. This chart was brought in upon insistence of appellant, and as we read it the showing is that from the date of maturity of the notes to Mr. Simms' death he was absent from the state about two years, eight months and fourteen days. Mr. Millican frankly admits that the chart may not be perfect in detail but as we view it his testimony, first for appellant and later for appellees, is the best evidence in the case, and it conclusively shows that during the questioned periods Mr. Simms was in Texas for more than four years.

We cannot overlook certain proof which might indicate that appellant was dilatory in prosecution of his claim. He admits he knew the Texas limitation statute. He does not explain why he failed to institute action upon maturity of the notes or thereafter. A reason for failure to present the claim to the Texas executor is obvious. There is proof by one witness (contradicted) that appellant had said that the collection of the notes was barred by limitation.

In sec. 129 of Vol. 28 Texas Jurisprudence the statute is referred to, and it is written: "In view of this statute, the time in which a debtor is absent from the state is not considered in computing the statutory period; it is only when the debtor has remained in the state for the full period of time prescribed by the statute, after the accrual of the cause of action, that a plea of the statute is maintainable * * *." The Texas courts have followed the construction, supra, in Montgomery. v. Brown, 9 Tex. Civ. App. 127, 28 S. W. 834, 835; Koethe

v. Huggins, Tex. Civ. App. 271 S. W. 143, citing other cases.

This case points out that the time of each departure from the State may be considered in determining the whole time of the absence, and when so determined should be deducted from the period of limitation, "and if after so doing, limitation has not run, the debt is not barred." The converse of course is true. Koethe v. Huggins, Tex. Civ. App., 290 S. W. 790; McNutt v. Cox, 133 Tex. 409, 129 S. W. (2d) 626, 122 A. L. R. 941. The last case holds that absence from the county of residence does not toll the statute.

Counsel for appellant contends that the Texas courts have held that while the statute is suspended during the debtor's absence from the state, and is set in operation by his return, the return must be in such circumstances as would afford the plaintiff reasonable opportunity to obtain service of process. Teal v. Ayres, 9 Tex. 588, cited in Montgomery v. Brown, supra.

There is no showing here that either the departure of Simms from the state or his return was in secret. While it is true that there is proof that Mr. Simms instructed his office force to keep off creditors and perhaps process servers during the time he was being beleaguered by creditors, it is obvious that a great part of this period was prior to the maturity of the notes. Whether this be true or not, it may be readily gathered that there was little or no concealment or evasion on the part of Mr. Simms as far as appellant was concerned, since he does not make it appear that he ever evaded him, or that he was told by the office force that he was out of the state. He saw him twice in his office; admitted that he had dined with him and visited him in his home. In brief the record shows sufficiently that appellant had more than one reasonable opportunity "by exercise of reasonable diligence" to set in motion such machinery as would have tested out the question of Mr. Simms' amenability to process. Under such circumstances as were shown by appellant himself his failure to act was "negligence, of which he should not be allowed to take advantage." Glenn v. McFaddin, Tex. Civ. App., 143 S. W. 234, 235.

The matter just discussed, like the entire issue was of facts and to be considered by the chancellor, and

upon the whole case and under proof conflicting in nature, we would not be justified in directing reversal unless there existed in our minds more than a doubt of the correctness of the court's conclusions. Crook v. Feller, 291 Ky. 169, 163 S. W. (2d) 476, and cases cited, Collins v. Pigman, 292 Ky. 240, 165 S. W. (2d) 955. Upon the principle established in these cases, along with others of like import, we could do nothing save uphold the chancellor's conclusions, hence the judgment is affirmed.