## Buckner v. Buckner et al.

Oct. 12, 1943.

Jouett & Metcalf for appellant.

Rodney Haggard for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, father and statutory guardian of Allen Buckner, Jr., an infant under 14 years of age, brought this action in the Clark circuit court seeking judgment and order of the chancellor approving a contract of sale and authorizing him to sell certain real estate situated on East Main Street in the city of Winchester, Kentucky, which property was devised to Mary Buckner for life with remainder in fee to Allen Buckner, Jr., under the will of Nancy C. McEldowney, with the further provision that Allen Buckner, Sr., and Jane

Buckner, his wife, be permitted to live in the residence without rental so long as they live or as long as they desire.

In March, 1943, Allen Buckner, Sr., and his wife, Jane Buckner, parents of Allen Buckner, Jr., and Allen Buckner, Sr., as guardian of Allen Buckner, Jr., entered into a contract with the Guerrant Clinic, a corporation, for the sale of the property referred to for the sum of $12,000, conditioned upon the approval of the chancellor. Allen Buckner, Sr., in his own right and as statutory guardian of Allen Buckner, Jr., and his wife, Jane Buckner, also entered into a contract with Mrs. Gertrude Reid and her husband, R. R. Reid, for the purchase of a lot or tract of land and a residence and all improvements thereon, located on French Avenue in Winchester, at the purchase price of $12,000, as a reinvestment of the proceeds of the sale of the property on Main Street, referred to in the record as the McEldowney or Buckner property. A copy of the will of Nancy C. McEldowney, deceased, and copies of the two contracts referred to are filed with the petition as exhibits. Allen Buckner, Sr., the plaintiff, also alleges and proposes in the petition that if permitted to sell the McEldowney property on Main Street and to purchase the Reid property on French Avenue in the manner described above, he will make all necessary repairs to the Reid property at his own personal expense. It is averred in the petition that the Guerrant Clinic owns property adjoining the McEldowney property proposed to be sold, and the clinic desires to purchase the property for the purpose of building an addition to its clinic and that the price offered, $12,000, is a fair and reasonable value of the property and also that $12,000 is a fair and reasonable value of the Reid property proposed to be purchased, and that the sale of the McEldowney property and the reinvestment of the funds in the Reid property would be advantageous to his infant ward, Allen Buckner, Jr.

Rodney Haggard, a practicing attorney of the Clark county bar, who was appointed guardian ad litem for the infant defendant, Allen Buckner, Jr., filed a special demurrer to the petition on the grounds that there was a defect of parties plaintiff, and also filed a general demurrer, both of which were overruled. The guardian ad litem also filed an answer in which he stated that the pleadings and proof are not sufficient to justify the re-

lief sought and prayed that the plaintiff's petition be dismissed. Later, R. Russell Grant, who was appointed as guardian ad litem for service of process, also filed an answer in which he stated that he was unable to make any defense other than that interposed by the other guardian ad litem, Rodney Haggard. The plaintiffs took the depositions of six witnesses whom defendant cross-examined but introduced no witnesses of their own.

Allen Buckner, Sr., testified that $12,000 was a fair price for the McEldowney property sought to be sold and also that $12,000 was a fair and reasonable value of the Reid property which he contemplated purchasing with the proceeds of the McEldowney property in the event it was sold, and that he thought that it would be very advantageous to his infant ward. He said that Mrs. Reid and others told him that Mrs. Reid paid $14,000 for her property and had paid in excess of $6,000 in additions, repairs, etc., after she had purchased it. This was hearsay evidence, but no objections were made thereto or any exceptions filed to the depositions, hence the incompetency was waived. He said that under normal conditions it possibly would cost in excess of $12,000 to reconstruct or build a house like the McEldowney house, but that the house was between 45 and 50 years old and had depreciated. The McEldowney lot is 80 feet along Main Street and extends backwards about 240 feet, and the Reid property sought to be purchased consists of 215 feet frontage on French Avenue and about 515 feet deep, and consists of about 2½ acres. He said that he would make necessary repairs to the Reid property, if any were needed, at his own expense and contemplated investing the entire purchase price of the McEldowney property in the Reid property.

T. J. Bowser, who is engaged in insurance and real estate business, testified that he was acquainted with the market values of property in Winchester and was acquainted with the McEldowney and Reid property here involved, and that he considered $12,000 a fair and reasonable price for the McEldowney property and that the same sum was a fair price for the Reid property, and that he considered the purchase of the Reid property as being advantageous to the infant. George W. Shepherd gave evidence to the same effect and said that he, as a real estate agent or broker, had previously listed the Reid property at more than $12,000. He said that he

had recently gone through the house on the Reid property and that the house was in good condition except that one outside house which was used for servant quarters might need some repairs, and that the Reid house had been remodeled just a few years ago. R. P. Taylor's testimony was along the same line as that of the above witnesses and he expressed the opinion that $12,000 "is every penny in the world that it is worth" (the McEldowney property), and a sale of the property at that price and the purchase of the Reid property would unquestionably be a judicious and wise investment for the infant, Allen Buckner, Jr. He said he sold the Reid property to Mrs. Reid at the price of $14,000. He further said that he believed that more buyers would be interested in the Reid property than the McEldowney property at the same price, and that the Reid property was worth more than the McEldowney property. It is shown that the clinic was interested in purchasing the McEldowney property for the purpose of building an addition to the clinic and that it was the only prospective purchaser who had offered $12,000 for the property. Richard F. McCready, who was an executive vice-president of the Federal Savings and Loan Association, testified that he had had experience in buying and selling real estate in Winchester for about 15 years, during which time he had participated in the purchase and sale of property and was one of the appraisers of the bank for the purpose of making loans on real estate. He said that $12,000 was a fair and reasonable price for the McEldowney property and that the same sum was also a fair and reasonable price for the Reid property, and expressed the opinion that the exchange would be beneficial to the infant owner of the remainder estate and also advantageous to the life tenants, and that the Reid property has the greater value. He stated the reasons for his opinion as follows: "The Reid property has a number of advantages as a residence in my opinion that the Allen Buckner property doesn't have. One of them is that it consists of about two and a half acres, and the house sits back from the street a nice distance. It is in a strictly residential section, and I consider that the resale value of it would probably be better than the Allen Buckner house. In fact in the absence of being able to sell it to the Guerrant Clinic I don't believe the price of over $9,000.00 or $10,000.00 could be secured for the Allen Buckner property because it is not suitable as it

is for residential purposes for the ninety-nine per cent of persons interested in buying a residence. It would have to be converted into an apartment properly, and that would in my opinion cost about $6,000.00 to convert it into four modern apartments, and after you had it converted into four modern apartments at a cost of approximately $6,000.00 you couldn't rent them for over $40.00 a month, which would give you really a very low return on your investment, 12% gross, which would net about 5% net. So I think the sale is very advantageous." The evidence of George E. Tomlinson, who has resided in Winchester 43 years and was a former Mayor of the city, gave testimony along the same line in substance and effect as the previous witnesses.

The cause was submitted to the chancellor on the pleadings and evidence and he entered judgment refusing to authorize the sale, assigning as the only reason therefor that "the sale was not advisable and the price not satisfactory."

Defendants insist that the judgment should be affirmed on two grounds: (1) That the petition is insufficient to support the judgment in that the allegation in the petition that the sale of the McEldowney property and the reinvestment of the proceeds in the Reid property would be advantageous to the infant remainderman, was a mere conclusion of the pleader, since he stated no reasons for his opinion; and (2) the evidence is sufficient to support the judgment of the chancellor. The plaintiff stated in his petition that it would be to the best interests of and advantageous to the infant remainderman to sell the McEldowney property and purchase the Reid property for the reason that there is no ready demand for property of the type of the McEldowney property and that the proposed purchaser was in a better position to acquire the property and use it to its advantage than any other purchaser would be. It also appears from the pleadings and evidence as a whole that the clinic is the only prospective purchaser who would be willing to pay $12,000 for the property and it would not do so but for the fact that it owns adjoining property and desires to build an addition to its clinic. It may be conceded that the plaintiff's reasons assigned in support of his opinion that it would be advantageous to the infant remainderman to consummate the deal proposed are rather indefinite and better reasons might

have been stated, yet we think that subsequent pleadings and the evidence cured the defect, if any. The issue finally joined by the pleadings was whether or not the proposed sale and reinvestment would be advantageous to the infant remainderman and evidence was taken on that issue. We conclude that the pleadings aided by the evidence are sufficient to support the judgment.

With respect to the evidence it is seen that it tends to support the idea or conclusion that the proposed sale of the McEldowney property and the purchase of the Reid property would be advantageous to the infant remainderman. The evidence tends to show that while the house on the McEldowney property proposed to be sold is perhaps better than the one on the Reid property the difference in value between the houses, if any, is more than offset by the difference in the size of the respective lots. The Reid property consists of about 2½ acres, and according to the evidence of a number of witnesses who had had experience in dealing in real estate in the city of Winchester, the lot is susceptible of being subdivided into other lots, all of which are located in a desirable residential section of the city and undoubtedly is of greater value for residential purposes than the McEldowney property. The McEldowney property is located in or near the business section of the city and might be of greater value for business purposes than the Reid property, but it appears that no one except the clinic was willing to pay $12,000 for the property and it is doubtful that it would pay that price but for the fact that it owns property on which the present clinic is located and desires to purchase the McEldowney property for the purpose of extending its clinic building.

This sale and reinvestment is proposed to be made pursuant to chapter 137 of the Acts of 1942, which repealed and amended sections 489, 491 and 497 of the Civil Code of Practice, and authorizes guardians of infants to sell real estate of infants provided that such sale shall have been approved by the Judge of the circuit court in the county where the land or a portion thereof is situated, and if the chancellor shall deem the sale advisable and the terms and price satisfactory he shall enter an order approving the same. We do not think, however, that the Act contemplated vesting the chancellor with arbitrary power, but only vests him with a discretion to be exercised in the light of the evidence

and attendant circumstances. We think this sort of proceeding comes within and is governed by the well known rule that when this court does not entertain more than a doubt as to the correctness of a chancellor's finding the judgment will be affirmed; but, on the other hand, if we are satisfied that the judgment is contrary to the preponderance of the evidence, we will reverse the judgment. It is our conclusion that the preponderance of the evidence shows that the sale of the McEldowney property and the reinvestment of the proceeds in the Reid property, as proposed, would be to the best interests of the infant remainderman.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.