**Irene RENFRO, Appellant,**

v.

**William E. RENFRO, Appellee.**

Court of Appeals of Kentucky.

June 1, 1956.

John C. Lovett, Lovett & Lovett, Benton, for appellant.

Earl T. Osborne, Benton, for appellee.

MONTGOMERY, Judge.

In the divorce action brought by Irene Renfro against William E. Renfro, the judgment granted the husband a divorce and custody of Deborah Lee Renfro. Other relief was adjudged. Irene Renfro appeals from that part of the judgment which awarded the child's custody to the appellee and denied appellant maintenance and support for the child.

The question is whether the Chancellor abused his discretion in awarding the custody of the child to the father.

The marital history of the parties is enlightening. Appellant married Bertrand L. Durham on August 24, 1935. A daughter was born to that marriage. Durham obtained a divorce in July 1939 on the ground of cruel and inhuman treatment. On December 8, 1939, appellant married Earnest Wilkins, from whom she was divorced in February 1943. Her next marital venture was with Elmer Hodge on December 7, 1947. It ended in July 1950, when Hodge was killed in the military service.

The parties to this action were married on November 6, 1952. Deborah Lee Ren-

fro was born on July 13, 1953. The appellant is now forty-two years of age. So far as we are able to discover, the record is silent as to the age of appellee. He, too, has a daughter by a former wife, who had divorced him.

About two weeks after the marriage, the parties in this action moved from Louisville to Marshall County. Appellee has been employed by National Carbide Company since the marriage. While residing in Marshall County, he has worked as a foreman for the company at Calvert City.

The married life of the parties has been neither tranquil nor serene. Between November 5, 1953, and October 5, 1954, appellant filed and dismissed four divorce actions against appellee. During the course of their marriage, she left him seven times. He left her once. The present action was filed December 10, 1954. On February 8, 1955, they resumed cohabitation. This continued until about June 2, 1955, when appellant left again and sought to establish residence in Jefferson County, Kentucky, where she filed another action for divorce on June 11, 1955. Her motion to dismiss the Marshall County action because of the pendency of the Jefferson County suit was overruled.

Appellant charged that appellee was guilty of cruel and inhuman treatment and had a confirmed habit of drunkenness. Appellee charged appellant with cruel and inhuman treatment. As frequently happens, much proof was introduced by both parties which indicated that the lives of neither had been exemplary before the marriage.

There is proof that prior to their marriage each party had engaged in questionable conduct with members of the opposite sex, and that appellant bore the reputation of being a prostitute while residing in Bowling Green. In 1951, James Ogles' wife sued appellant for alienating the affections of her husband. Appellant furnished Ogles money with which to settle with his wife. The teen-age daughter of appellant lived with her in Bowling Green during the time when James Ogles was visiting her and keeping part of his belongings in her home.

Appellant and Ogles engaged in "hugging and kissing" in the daughter's presence. One Frank Snell was shown to have had a questionable association with appellant during her stay in Bowling Green. Appellee confessed to having lived in adultery with one "Pearl", and admitted that he falsely told his daughter that "Pearl" was his wife when the daughter visited him.

The testimony for appellant shows that appellee on occasions indulged freely in alcoholic beverages. While drinking, appellee was arrested on one occasion and was disorderly at other times. He was unusually profane, and struck, cursed, and abused his wife on various occasions. The evidence shows that appellant talked a lot to their neighbors about her husband's drinking. Appellant admitted taking as many as two beers or highballs at times with appellee as a social gesture, in spite of her dislike for the taste of alcoholic beverages.

There was much conflicting testimony introduced on the question of the fitness of the parties to have the custody of the child. Part of it was, admittedly, hearsay.

Appellant owns the home in Benton, Kentucky, which was purchased and furnished by the parties after they moved from Louisville. There is an outstanding balance due on the purchase price of the property. The monthly income of appellant consists of $55 rental on a house owned by her in Bowling Green and $46.45 compensation as the surviving widow of her husband who died in the military service. Appellant claims to be in good health except for an old back injury, which she says prohibits her from being gainfully employed.

Appellee has been employed by the same employer since the marriage. He works eight hours per day on swing shifts and is paid between $400 and $500 per month. Regular payments on their home and car were made by him during their marriage. At this point, it should be noted that just prior to the marriage, appellee was working only part time at a bar.

When judgment was rendered, appellee was living in a rooming house sixteen miles from his place of employment and was

eating his meals in restaurants. It was necessary to have the child kept by a baby sitter in his absence. The parents of appellee reside in Tennessee, and there is no suggestion that the child will be raised by them.

It may readily be seen that the Chancellor was confronted with a choice between two parents, each of whom left much to be desired as a parent. The child involved is a little girl who soon will be three years old.

The principles of law involved are well recognized. In all cases concerning children of tender years, a mother will be deprived of the custody of the child only when she is shown to be a person unfit to have such custody or is unable to provide a suitable home. Bowman v. Bowman, 310 Ky. 509, 221 S.W.2d 71; Harp v. Harp, 314 Ky. 618, 236 S.W.2d 698. The welfare of the child is the determining factor concerned. Clark v. Clark, 298 Ky. 18, 181 S.W.2d 397. The Chancellor has a wide discretion in such cases. The exercise of that discretion will not be interfered with except where it is abused. When the evidence is conflicting, much weight is given to the Chancellor's decision, and after weighing the evidence, the judgment will be reversed only when we are convinced that he was in error. Hager v. Hager, 309 Ky. 803, 219 S.W.2d 10; Newby v. Newby, Ky., 275 S.W.2d 779.

It is evident from the record in this case that the appellant is emotionally unstable and morally delinquent. Her record of unsuccessful married life, the many separations and beginning of divorce actions while married to appellee, her association before their marriage with men other than her husband, and her conduct toward her husband are indicative of such instability and delinquency. Appellant's conduct was similar in some respects to the mother's conduct in Hamilton v. Brown, Ky., 272 S.W.2d 663, where the custody of a child was denied the mother in favor of a person not related. The record is full of testimony which indicates that appellant has never been and is not now capable of maintaining a fixed, proper, and suitable home life for

the child involved. The condition of her health, her inability to be gainfully employed, the size of her income, and the unpaid balance due on her home indicate that appellant is not able financially to maintain her home.

The shortcomings of the father have been pointed out, but he has demonstrated a greater stability, both economically and morally, than the mother. He has been employed steadily and has an income sufficient to supply the material needs of the child. By his regular payments on the home and car, he showed an ability and desire to assume responsibility and maintain a home. While his present living conditions are undesirable for a small child, there is the possibility of improvement.

Parenthood is a privilege which carries with it many responsibilities and duties. Primarily, it is the father's responsibility to see that the child is provided for and kept in a suitable home. The selection of someone proper to care for the child while the father is working could well be a boon to the child.

In view of the situation with reference to this child, it may be well to remind the parents that the state has an interest in the welfare of the child too. A parent may be prosecuted for failing to provide adequately for the child. KRS 435.240. Parental rights to a child may be terminated upon the failure of the parent to provide the proper care, and in such cases, it is made the duty of the court to do so by making the child a ward of the state. KRS 199.600 et seq.

The conduct of the mother in each of the cases cited by appellant was far better than that of this appellant. In some of those cases, the wife was guilty of misconduct with a man whom she later married. On this basis, those cases are distinguishable from this case.

[5] Under the circumstances, the Chancellor did not abuse his discretion in awarding the child to the father. As was pointed out in Harp v. Harp, 314 Ky. 618, 236 S.W.2d 698, the court retains jurisdiction.

and control over the custody of the child. Upon a change of condition, either adverse to the father or favorable to the mother, the court may make such change in the custody as may be deemed proper at that time.

Judgment affirmed.