James L. WELLS et al., Appellants,

v.

Lucia R. WELLS (now Monti), Appellee.

Court of Appeals of Kentucky.

March 10, 1967.

See also Ky., 406 S.W.2d 157.

William A. Young, James L. Williams, Young & Williams, William E. Johnson, Morris E. Burton, Johnson & Burton, Frankfort, for appellants.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for appellee.

STEINFELD, Judge.

The only question before the Court is whether the custody of Henry Paul Wells, born August 8, 1961, shall be in his father and paternal grandparents or in his mother. The learned chancellor adjudged that it should be in the mother. From that judgment the father and the grandparents appeal.

James L. Wells and Lucia R. Wells (now Monti) were husband and wife. The only child of this marriage was Henry Paul Wells. During almost all of their married life they lived in the home of James' parents, Henry H. Wells and Thelma Wells. On August 1, 1964, when it was apparent to this couple that their marriage was unsuccessful and a divorce imminent they entered into an agreement which, among other things provided "That in view of the fact that both of these parties have no definite place of abode and feel that it would be to the best interest of the child, Henry Paul Wells, age 3, to have the custody of said child granted to Mr. and Mrs. Henry H. Wells, 222 Birchwood Avenue, Frankfort, Kentucky, the paternal grandparents of said infant child * * *". It also stated that both parents should have visitation rights. The agreement was followed by the parties and was incorporated in the di-

vorce judgment which was entered on September 8, 1964. Henry Paul remained with his father and paternal grandparents after that date, except for several visits to his mother. Lucia moved to Steubenville, Ohio where she found employment as a waitress in a restaurant.

On August 11, 1965, Lucia petitioned for custody of the child. After a hearing her demand was granted, but because the trial court improperly considered certain confidential reports we reversed, (Wells v. Wells, Ky., 406 S.W.2d 157) and directed that the custody of Henry Paul be reconsidered. After hearing additional testimony which revealed that Lucia remarried on May 7, 1966, the chancellor entered an order awarding the custody of Henry Paul to his mother. James L. Wells, Henry Wells and Thelma Wells (the paternal grandparents) appeal, which is their right. Gates v. Gates, Ky., 412 S.W.2d 223 (decided January 27, 1967).

■ It is claimed that the agreement above referred to, which was signed by Lucia prevents her from claiming the child. The lower court found that it "was not intended * * * to be an absolute relinquishment of her preferential right to the custody of her son but was entered into under conditions of temporary distress or discouragement, without advice of counsel, as a temporary solution to the problem of what to do with the boy at a time when both parties had no definite place of abode." We agree. Mullins v. Mullins, 314 Ky. 178, 234 S.W.2d 680; Morell v. Morell, 291 Ky. 686, 165 S.W.2d 351.

"The fact that the parties made an agreement for the custody and support of children and that the court approved it in the original decree does not effect the power to modify the decree." 17 Am. Jur. 36, Sec. 844 Divorce and Separation. 73 A.L.R.2d 1444.

There is no claim that any of the parties is unfit to raise the child. He is the object of many persons' love and desire. To whom shall he go is the only question. Courts or their counterparts have tried to solve similar perplexing questions since the days of King Solomon. There is no mathimatical formula and no engineering data or standard to guide. In these situations the trial court must weigh the intents of nature against man made conditions and situations. These are difficult questions. McReynolds v. Hughes, Ky., 398 S.W.2d 482.

■ The fundamental and dominant question is what is best for the child. Gates v. Gates, supra; Brengle v. Hurst, Ky., 408 S.W.2d 418. In seeking the correct answer, the court must ignore the anticipated unhappiness of disappointed litigants. Wells v. Wells, supra; Lewis v. Lewis, Ky., 343 S.W.2d 146.

The chancellor, a learned jurist, heard testimony before the first appeal and concluded that Henry Paul should be with his mother. After our decision he heard other witnesses among whom were Vincent Monti, (Lucia's husband) and a social worker. Vincent Monti expressed his affection for and desire to have Henry Paul as a part of his family. He testified as to his financial ability and willingness to provide for his family. The trial court said that he "was favorably impressed with his general demeanor." It appears that the child would have suitable environment and opportunity of education if he remained in his present home or was removed to the new home of his mother. In this regard Henry Paul has two domiciles offered to him, each occupied with people offering love and care. Few children are equally blessed.

It was found below that "The natural father remains on the outskirts of the controversy, passively seconding the application of his parents to retain exclusive custody of his son. He exhibited no real affection for his son and no desire to have custody of him (although he, too, has remarried and could offer his son a home) the main force of his brief testimony being that the place for the boy was with his present custodians."

The nature of the work in which the grandfather is engaged is such that he is in the home only on part of the weekends. The chancellor wrote:

"A boy needs a Dad. Mr. Monti appears to be ready to supply that deficiency and the court feels that young Henry Paul will fare better on his journey down life's road if he has the loving care of his natural mother, for which there is no substitute (Stapleton v. Poynter, 111 Ky. 264, 62 S.W. 730 [53 L.R.A. 784]) and the daily companionship of his young and apparently devoted stepfather."

 The appellants rely upon Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22 to support their contention that the child should remain with the grandparents. In Horn the children, then 10 and 13 years of age respectively, expressed their desire to remain with the Horn family. The court concluded that the children appeared to have a better future if they remained where they were. Williams v. Neumann, Ky., 405 S.W.2d 556 and Lee v. Thomas, et ux., 297 Ky. 858, 181 S.W.2d 457, also cited by appellants were adoption cases. While in each of those cases there were facts similar to the one now before us, nevertheless "The welfare of the (child) is the determinative consideration in light of the peculiar facts of the case" under consideration. Hall v. Hall, Ky., 386 S.W. 2d 448.

The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation. Gates v. Gates, supra; McCormick v. Lewis, Ky., 328 S.W.2d 415. The court below made findings of fact which may be set aside only if clearly erroneous. Hall v. Hall, supra; CR 52.01, 7 Kentucky Practice, Clay 103. We do not find that they are. They are not "manifestly against the weight of evidence." Ingram v. Ingram, Ky., 385 S.W.2d 69; Craddock v. Kaiser, 280 Ky. 577, 133 S.W. 2d 916. A reversal may not be predicated on mere doubt as to the correctness of the decision. Buckner v. Buckner, 295 Ky. 410, 174 S.W.2d 695. When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the chancellor. Gates v. Gates, supra; Renfro v. Renfro, Ky., 291 S.W.2d 46. We do not doubt that the chancellor was correct, however, we recognize the very close question which was presented. We hope that wisdom has been provided so that the decision reached will prove to be correct.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE and PALMORE, JJ. concur.