Mark **KELSAY**, Appellant,

v.

Tracie **CARSON**, Appellee.

No. 2009–CA–002175–ME.

Court of Appeals of Kentucky.

July 16, 2010.

Samuel Todd Spalding, Lebanon, KY, for appellant.

Patrick S. McClure, Danville, KY, for appellee.

Before MOORE and THOMPSON, Judges; WHITE,[1] Senior Judge.

## OPINION

MOORE, Judge:

Mark Kelsay appeals from an order of the Boyle Family Court, which made Tracie Carson the primary residential custodian over the parties' minor child. After careful review of the record, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mark and Tracie are the parents of one minor child, Caitlyn Kelsay, born on February 17, 2000. Mark and Tracie were never married. Pursuant to an order of the Boyle Family Court entered August 17, 2004, the parties were awarded joint custody of Caitlyn with Mark being designated as the residential custodian.

On October 22, 2008, Tracie filed a motion requesting that the custody of Caitlyn be awarded to her. A hearing was subsequently held on July 10, 2009. Following the hearing, the family court found that there had been a change in circumstances which re-established a past pattern of conduct for Mark, specifically Mark's trouble with alcohol consumption. While the family court heard evidence in favor of Mark continuing in his residential custodian status, specific evidence was presented that Mark received two driving under the influence convictions (DUIs) within the 18 months preceding the hearing. Mark also had an alcohol intoxication charge and a history of four other DUIs, with the latter

two coming with extremely high blood alcohol levels.

During the hearing, the family court inquired as to how Mark thought the matter should be dealt with and what he could do to assure the court that placing Caitlyn with him would not be contrary to the child's best interest. In response, Mark testified only that he never drank around Caitlyn and that he was again seeking help for his alcohol addiction. However, the family court was unconvinced that his issues with alcohol would not re-emerge in the future, and consequently continued joint custody, but made Tracie the primary residential parent of Caitlyn. This appeal followed.

## II. ANALYSIS

■ Mark contends that the family court erred in modifying the joint custody agreement because Tracie failed to produce evidence that would warrant such modification. We disagree.

In reviewing the matter at issue, we observe that visitation or time-sharing may be modified pursuant to Kentucky Revised Statute (KRS) § 403.320, and custody may be modified pursuant to KRS § 403.340. The distinction between a visitation/time-sharing motion and a custody motion has been explained by our Supreme Court in *Pennington v. Marcum*, 266 S.W.3d 759 (Ky.2008).

In *Pennington*, the Court stated as follows:

> The obvious problem is that parties often ask for one thing when they are actually seeking the other, due to the unique nature of their shared (joint) custody or split (sole) custody. Courts

---

1. Senior Judge Edwin White, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

have struggled ever since the concept of joint custody emerged with what part physical or residential possession of the child plays in each type of custody.

*Id.* at 767 (footnote omitted).

The *Pennington* court also stated that "the first question on a custody modification ... is, '[i]s the motion actually seeking modification of custody or visitation/time-sharing?'" *Id.* at 768. Answering this question, we believe that the present matter involved a modification of visitation rather than custody. Notably, the family court ordered that joint custody would continue with the change from Mark to Tracie as primary residential custodian. It is significant that the family court changed the primary residential custodian; therefore, our analysis focuses on the meaning of the designation of the primary residential custodian.

In *Pennington,* the Kentucky Supreme Court discusses that, since Kentucky became a no-fault divorce state, joint custody arrangements have attained equal status with sole custody arrangements and that "custodial arrangements have become increasingly amorphous." *Id.* at 764. The Court further stated:

> Though it is often stated that there are two categories of custody, sole custody and joint custody, there is in practice a subset of joint custody that combines the concept of joint custody with some of the patterns of sole custody—often called "shared custody." In shared custody, both parents have legal custody that is subject to some limitations delineated by agreement or court order. Unlike full joint custody, time sharing is not necessarily flexible and frequently mirrors a typical sole custody pattern where the child may live with one parent during the week and reside with the other on alternate weekends. The weekend parent does not have "visita-

tion," a sole custody term which is frequently misused in this context, but rather has "time-sharing," as he or she is also a legal custodian. However, in practice, the terms visitation and time-sharing are used interchangeably. Additionally, one parent may be designated the "primary residential parent," a term that is commonly used to denote that the child primarily lives in one parent's home and identifies it as his home versus "Dad's/Mom's house." This concept is frequently misnamed "primary residential custody."

*Id.* at 764–765.

In the present case, Tracie originally filed a pleading styled "Motion to Change Custody." The reality of the family court's decision, however, was to deny the Motion to Change Custody and to modify time-sharing within the joint custody arrangement. As Tracie does not raise the denial of her Motion to Change Custody as an issue in this appeal, she concedes that the substance of her motion reflects that she was actually seeking to be named the primary residential parent. It should be noted here that the family court used the phrase "primary residential custodian" when it apparently meant "primary residential parent."

Under *Pennington,* then, Tracie's request was a motion to modify the parties' visitation/time-sharing arrangements and, as previously mentioned, is governed by KRS § 403.320, which states:

> (3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

Therefore, Tracie was required to demonstrate only that modification would serve the best interest of Caitlyn.

■ Thus, the question becomes whether the family court erred in concluding that the designation of Tracy as primary residential parent was in the best interests of Caitlyn. Our review is governed by Kentucky Rules of Civil Procedure (CR) 52.01, which provides, in relevant part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Findings of fact are clearly erroneous only if they are manifestly against the weight of the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008); *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky.1967). "When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Frances*, 266 S.W.3d at 756.

Here, the family court did not base its decision on KRS § 403.320; instead it based its decision on the factors listed under KRS § 403.340 and KRS § 403.270, both of which employ a best interest standard in making determinations of custody and modification of custody. While the family court did not utilize the correct statute in determining the modification of visitation/time-sharing in this case, it did follow the same best interest standard that governs KRS § 403.320.

Further, there was evidence presented to the family court that Caitlyn's best interests would be served by Tracie becoming the primary residential parent. The evidence presented proved that Mark has had a total of eight known violations regarding alcohol within the life of the child, including six DUIs. Two of these DUIs occurred since the last custody order in August 2004 with blood alcohol levels of at least four times the legal limit.

The family court also gave Mark the opportunity to explain his alcohol addiction and to ensure to the court that placing Caitlyn with him would not be contrary to the child's best interest. Mark testified that he never drank around Caitlyn and was seeking help, but completely failed to supply the family court with assurances that his alcohol issues would not arise again in the future after repeated relapses in the past. It is obvious from watching the video of the hearing and reviewing the record, that the family court was not satisfied with Mark's explanation or credibility; as such, we are compelled to rely on the family court's observations.

As this case hinges on modification of visitation/time-sharing, not custody, it falls under the purview of KRS § 403.320. This statute states that visitation/time-sharing may only be modified upon a proper showing that "modification would serve the best interests of the child[.]" KRS § 403.320(3). Here, we believe the family court properly considered the evidence listed previously that demonstrated that it was "in the best interest of the child" that Tracie become the primary residential parent. We cannot say that the family court's findings were clearly erroneous or that it abused its discretion in making such a ruling.

Accordingly, the order of the Boyle Family Court is affirmed.

ALL CONCUR.