**Dawn MEEKIN (f/k/a) Hurst, Appellant,**

v.

**Douglas HURST, Appellee.**

No. 2010–CA–001641–ME.

Court of Appeals of Kentucky.

July 22, 2011.

Brian S. Katz, Paducah, KY, for appellant.

Heather L. Jones, Paducah, KY, for appellee.

Before DIXON and NICKELL, Judges; SHAKE,[1] Senior Judge.

## OPINION

SHAKE, Senior Judge:

Dawn Meekin (Dawn) appeals from a McCracken Circuit Court order that denied her petition for primary residential custody of her minor daughter, Ashton. On October 10, 2006, Dawn and her former husband, Douglas Hurst (Doug), entered into a mediation agreement that designated Doug as Ashton's primary residential custodian. The agreement further provided, "... the parties agree that after two years, absent a showing of serious endangerment to the child, the wishes of the child as to where she wants to primarily reside shall create a presumption of what is in her best interests." On appeal, Dawn claims that the court erred by disregarding the presumption created by the mediation agreement. With regard to visitation/timesharing modification, a circuit court must consider the "best interests of the child" in light KRS 403.320(3). The trial court conducted a thorough analysis concluding Ashton's best interests were for her to continue to live primarily with Doug. Therefore, the McCracken Circuit Court modification order is affirmed.

## I. Factual Background

In 1997, Dawn and Doug had their first and only child, Ashton. In 2004, the McCracken Circuit Court entered Supplemental Findings of Fact, Conclusions of

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Law, and a Supplemental Decree of Dissolution awarding Dawn and Doug joint custody of Ashton. The decree designated Dawn as Ashton's primary residential custodian.

Following the issuance of the divorce decree, both parties remarried. Dawn, her second husband, Kenneth Waggoner (Kenneth), and Ashton moved to Tampa, Florida. Following his petition for modification, the trial court awarded Doug increased holiday and summer timesharing.

Dawn and Kenneth had a tumultuous and violent marriage. The record indicates that Kenneth subjected Dawn to emotional and physical abuse. On a couple of occasions, Kenneth was also abusive to Ashton. At separate times, Dawn and Kenneth were both arrested on domestic violence charges.

Dawn and Ashton moved back to Kentucky in 2005. Kenneth lived with them until March, 2006, when Dawn obtained a domestic violence order (DVO) against Kenneth. They later divorced.

In June, 2006, Doug petitioned the trial court for custody modification. Dawn and Doug entered into a custody agreement designating Doug as Ashton's primary residential custodian and awarding Dawn timesharing.

The record indicates that Ashton has excelled while in Doug's care. She does well in school, participates in extracurricular activities, and is involved in her church. Nonetheless, Ashton and Doug's home life is not perfect. Doug's second marriage also ended in divorce. At the commencement of this action, Doug and Ashton lived with Doug's fiancée and her minor child. Their living arrangement and Doug's impending marriage created strife. As a result, Ashton requested to live with Dawn and reasoned that her mother would be the most appropriate while she is going through puberty.

On July 8, 2010, Dawn petitioned the McCracken Circuit Court for custody modification. Following a hearing, the trial court denied Dawn's request to be named the primary residential custodian. This appeal follows.

## II. The Mediation Agreement's Effect on the "Best Interests of the Child"

The mediation agreement purports to create a presumption that Ashton's wishes regarding her residence constituted the "best interests of the child". KRS 403.320(3), which provides courts with instructions regarding modification, contains no such presumption and courts cannot abdicate the responsibility the legislature has imposed.

Courts are charged to exercise sound discretion with regard to visitation/timesharing modification determinations. *Pennington v. Marcum,* 266 S.W.3d 759, 769 (Ky.2008). "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Appellate review of a trial court's decision on custody related issues is limited to a clearly erroneous standard. CR 52.01; *Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986). Findings of fact are clearly erroneous if they are manifestly against the weight of the evidence. *Wells v. Wells,* 412 S.W.2d 568, 571 (Ky.1967). The record contains ample evidence to support the circuit court's findings and conclusions.

While in Dawn's care, Ashton was subjected to a violent, unstable environment. Despite the abuse perpetrated on both Ashton and Dawn, Dawn allowed Kenneth to live in their home for several years. While in Dawn's care, Ashton attended four elementary schools prior to second grade. During this time, Dawn also frequently changed employment. While

Dawn was single, the record includes allegations that she entertained many men in her home and was frequently intoxicated. The circuit court's order indicated that the court was concerned by Dawn's instability and her past tolerance of domestic violence. Such concern is well founded and shared by this Court.

Although the trial court noted Doug's failed marriage and current living arrangement, the court concluded that Doug is the most appropriate primary residential custodian based upon the stable environment he has provided for Ashton. The record supports the court's decision.

Accordingly, the McCracken Circuit Court order is affirmed.

ALL CONCUR.