RENDERED:  AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000158-MR

DALE EUGENE MAYO                                          APPELLANT

v.
APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 18-CI-00367

ANNIE MAGLICYANG MAYO                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE:  Dale Eugene Mayo appeals from the findings of fact, conclusions of law, and decree of dissolution of marriage entered on December 19, 2018, and the order denying his motion for specific findings or, in the alternative, motion to alter, amend, or vacate said order, entered on January 9, 2019, by the Greenup Circuit Court.  Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

The parties were married in June 2009. At that time, Dale was employed with the Veterans' Administration (VA) Hospital in Huntington, West Virginia, and Annie was a full-time college student who was also employed. Prior to the parties' marriage, Dale purchased a parcel of land upon which he built a home. At the time of the parties' marriage, the home mortgage was $76,305. Thereafter, Dale refinanced the home and used the borrowed funds to pay over $20,000 of Annie's student debt. Annie's name was also added to the home's deed. Over the course of the marriage, Dale became disabled and began receiving disability benefits in 2014, while Annie obtained various professional degrees, improving her employment status. The parties had a joint checking account in which they deposited their paychecks, but Dale maintained control of the finances. Annie fixed up the yard, leveling the ground and planting grass, and had a concrete pad poured for an outdoor patio. In 2012, the home was valued at $135,000, and in 2018, the home was appraised at $154,000. At the time of separation, the house was under a mortgage of approximately $80,000, the parties owned two vehicles free of debt, and Annie had no outstanding student loan debt.

Annie left the marital residence, taking no furniture or household items. Because she did not have a separate checking account from which to pay her bills, she withdrew $16,000 of the $17,000 in the parties' joint account and

used approximately $7,000 to furnish an apartment. Annie also sent $5,000 to her family in the Philippines. In August 2018, a hearing on the use of those funds was held, and the trial court, finding that Annie may be in need of money, did not require her to return any of the funds taken from the joint account. Thereafter, Annie loaned $1,500 each to two friends.

After a final hearing in which both parties testified, the court entered its findings of fact, conclusions of law, and decree of dissolution of the parties' marriage. The court found: Annie did not dissipate marital funds; the amount of equity Annie had in the marital residence was offset by the funds she withdrew from their joint account; Dale's payment of Annie's student loans did not entitle him to maintenance; and Dale was not otherwise entitled to maintenance. Dale moved the trial court for specific findings or, in the alternative, to alter, amend, or vacate its decree. The motion was denied, and this appeal followed.

**STANDARD OF REVIEW**

The standard of an appellate court's review of a trial court's findings of fact is well-settled.

> The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation. Gates v. Gates, [412 S.W.2d 223 (Ky. 1967)]; McCormick v. Lewis, [328 S.W.2d 415 (Ky. 1959)]. **The court below made findings of fact which may be set aside only if clearly erroneous**. Hall v. Hall, [386 S.W.2d 448 (Ky. 1964)];

-3-

CR[1] 52.01, 7 Kentucky Practice, Clay 103. We do not find that they are. They are not 'manifestly against the weight of evidence.' Ingram v. Ingram, [385 S.W.2d 69 (Ky. 1964)]; Craddock v. Kaiser, [280 Ky. 577, 133 S.W.2d 916 (1939)]. A reversal may not be predicated on mere doubt as to the correctness of the decision. Buckner v. Buckner, [295 Ky. 410, 174 S.W.2d 695 (1943)]. **When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the chancellor.** Gates v. Gates, supra; Renfro v. Renfro, [291 S.W.2d 46 (Ky. 1956)].

*Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967) (emphases added). Accordingly, the crux of this case is whether the trial court's findings of fact are supported by substantial evidence. After careful review, we hold that they are; therefore, we must affirm.

## DISSIPATION OF THE MARITAL ESTATE

On appeal, Dale contends the trial court erred by finding that Annie had not dissipated $8,000 in marital funds by sending $5,000 to her family and loaning $3,000, collectively, to two friends. In support, Dale cites to *Brosick v. Brosick*, 974 S.W.2d 498 (Ky. App. 1998). Therein, the Court held:

The concept of dissipation requires that a party used marital assets for a non-marital purpose. The spouse alleging dissipation should be required to present evidence establishing that the dissipation occurred. Once the dissipation is shown, placing the burden of going forward with the evidence on the spouse charged with the dissipation is reasonable because that spouse is in a better position to account for these assets. This analysis

---
[1] Kentucky Rules of Civil Procedure.

pertaining to the shifting of the burden of going forward with the evidence, using the preponderance of the evidence standard, is in accord with the practice implicitly followed in *Barriger v. Barriger*, [514 S.W.2d 114 (Ky. 1974)].

*Id.* at 502. In *Brosick*, the husband spent and gave over $1,000,000 to his mistress while he was still married. In *Barriger*, the husband converted approximately $25,000 of the parties' savings into cash and then dissipated it through "reckless extravagance." 514 S.W.2d at 114-15. The husband testified that he took a Caribbean cruise, gambled in Las Vegas, and entertained a series of women.

This case is certainly factually distinguishable from *Brosick* and *Barriger* in that, here, Annie was able to account for the $8,000. Annie testified that Dale had not let her spend money during their marriage or send money to her family. She testified that she worked hard over the course of the marriage and should be allowed to help her family. Another panel of our Court held:

> a party is free to dispose of his marital assets as he sees fit so long as such disposition is not fraudulent or intended to impair the other spouse's interest such that it may properly be classified as a dissipation of the marital estate. *See Brosick v. Brosick*, 974 S.W.2d 498 (Ky. App. 1998) (finding of dissipation requires showing the money was expended for non-marital purpose, was done in anticipation of divorce, and was done to deprive other party of his or her interest).

> While giving away valuable assets may almost assuredly cause marital strife—and for that reason alone is generally avoided by those who wish to remain happily

> or peacefully married—we cannot conclude in this
> instance that the transfer was inappropriate . . . .

*Ensor v. Ensor*, 431 S.W.3d 462, 472-73 (Ky. App. 2013).

Here, Dale offered no proof—let alone proof sufficient to meet his burden by a preponderance of the evidence—that Annie defrauded him or acted with intent to deprive him of his share of marital property. Substantial evidence supported the court's finding that Annie did not dissipate marital funds; thus, we must affirm as to this issue.

**INCREASE IN VALUE OF MARITAL RESIDENCE**

Dale also argues that because no evidence was offered to explain the increase in value of the marital residence, except for general economic conditions, the increase in value is considered nonmarital property under KRS[2] 403.190(2)(e), which provides "[t]he increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage" is nonmarital property. However, in the case before us, this is not borne out by the record. Annie testified that while no significant improvements were made to the interior of the house, she made improvements to the yard and patio. Although she testified that she had no idea how much these improvements increased the value of the home, in the absence of proof from Dale to the contrary,

---

[2] Kentucky Revised Statutes.

-6-

the court was not only permitted to infer that the improvements increased the value

but required to do so.

As another panel of our Court observed:

> The burden of proof is on the party claiming that the increase in value is to be considered nonmarital, and he must satisfy that burden by "clear and convincing" evidence. *Brosick v. Brosick*, 974 S.W.2d 498 (Ky. App. 1998). "KRS 403.190(3) . . . creates a presumption that any such increase in value is marital property, and therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution. By virtue of the KRS 403.190(3) presumption, the failure to do so will result in the increase being characterized as martial [sic] property." *Travis v. Travis*, 59 S.W.3d 904, 910-11 (Ky. 2001).

> KRS 403.190(2)(e) carves out an exception to what is considered "marital property" for "[a]n increase in value of property acquired before the marriage to the extent that such increase *did not* result from the efforts of the parties during marriage." (Emphasis added). Therefore, conversely an increase in value of property that did result from the efforts of the parties during marriage should be considered marital property. In *Goderwis v. Goderwis*, 780 S.W.2d 39 (Ky. 1989), the Kentucky Supreme Court held that if nonmarital property increases in value during the marriage, the trial court must determine the reason for the increase. If the increase is attributable to general economic conditions, it is considered nonmarital. However, "[a]n increase in value of nonmarital property during marriage which is the result of a joint effort of the parties establishes the increase in value of the nonmarital property as marital property." *Id*. at 40.

*Croft v. Croft*, 240 S.W.3d 651, 653-54 (Ky. App. 2007).

The improvements to the home described and performed by Annie cannot be discredited as reasons for the increase in value. "The Court requires only a showing that the increase in value of the property was not solely attributable to general economic conditions, but was a result of the joint efforts of the parties in order to qualify property as marital property." *Id*. at 654. Thus, in the case herein, the court did not err in determining the increase in value of the parties' marital home was marital property.

Moreover, although the mortgage was higher at the end of the parties' marriage due to refinancing than at the beginning of the marriage, it is undisputed that marital funds were used to pay the mortgage. This further supports the trial court's finding that at least some of the increased value of the residence was marital property. *See id.* at 654-55.

## MAINTENANCE

Dale further argues the trial court erred in finding that his payment of over $20,000 of Annie's student loans was a gift and refusing to compensate him for this contribution to the acquisition of her professional degree in the form of maintenance. At the final hearing, Dale admitted he voluntarily paid these loans out of good will for his wife. Annie also testified these payments were gifts.

An award of maintenance comes within the sound discretion of the trial court; however, a reviewing court will not uphold the award if it finds that the trial court abused its discretion or based its decision upon findings of fact that are clearly erroneous. *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). Additionally, an award of maintenance must satisfy the statutory provisions of KRS 403.200, which provides:

> (1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> > (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
> >
> > (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.
>
> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
>
> > (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the

> > party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Dale cites to KRS 403.190(1)(d)[3] to support his contention that the court is permitted to consider the economic circumstances of the parties in dividing

---

[3] KRS 403.190(1) provides:

> (1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> > (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

marital property. According to Annie's tax return for 2017, she earned $78,183. By contrast, for the same year, Dale received $20,712 from Social Security and $4,493 in VA benefits. However, Dale was awarded the marital residence, its furnishings, and at least one vehicle, while Annie was awarded the $16,000 she previously withdrew from the parties' joint account, as well as a few limited items. Hardly a windfall. Nevertheless, Dale further contends that KRS 403.200 authorizes the court to consider the economic circumstances of the parties in determining maintenance, including the fact that one spouse acquired a professional degree with the help of the other.

As noted, to properly award maintenance under KRS 403.200, a court must find the spouse seeking maintenance (1) lacks sufficient property, including the marital property apportioned to him or her, to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment. Herein, the court considered the bills presented by Dale, which

---

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

-11-

included amounts for services he had performed in the past—with no apparent difficulty according to Annie—such as mowing, power-washing the home, and washing/waxing the vehicles. Dale's projected monthly expenses were calculated based on mowing weekly, power-washing the house monthly, and washing and waxing two vehicles monthly. Per those estimated expenditures, Dale claimed a deficit of $25 per month in paying his bills. The trial court found Dale's income sufficient to pay his monthly expenses and properly take care of himself. Similarly, Dale was awarded sufficient property to provide for his reasonable needs.

Kentucky does not have a set formula for "reimbursement alimony." *Schmitz v. Schmitz*, 801 S.W.2d 333, 336 (Ky. App. 1990). The solution depends upon the facts of the case. *Id.* Here, the trial court specifically stated it "carefully considered the expenses of both parties, the income of both parties and the lifestyle in which they were accustomed in arriving at this decision on the issue of maintenance." This determination was supported by the record, well within the discretion of the trial court, and will not be easily set aside. Therefore, we hold that the court did not abuse its discretion in denying maintenance.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders entered by the Greenup Circuit Court are AFFIRMED.

-12-

ALL CONCUR.

BRIEF FOR APPELLANT:

James W. Lyon, Jr.
Greenup, Kentucky

BRIEF FOR APPELLEE:

R. Stephen McGinnis
Erin N. Hall
Greenup, Kentucky