RENDERED: NOVEMBER 13, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1198-MR

CURTIS DAVIS                                                                      APPELLANT

v.                        APPEAL FROM JEFFERSON CIRCUIT COURT
                          HONORABLE LAUREN ADAMS OGDEN, JUDGE
                          ACTION NO. 08-CI-501769

BRYNN WARNOCK                                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE:  Curtis Davis appeals from orders entered by the Jefferson

Circuit Court on July 22, 2019, and August 7, 2019, modifying an agreed order

concerning allocation of child tax exemptions.  Following review of the record,

briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

This action concerns the allocation of dependency exemptions between the parties, Curtis Davis and Brynn Warnock, as part of their divorce action. Two daughters were born during the parties' marriage. On November 18, 2008, the trial court entered an agreed order as to property, custody, and support, the relevant portion of which stated:

> Dependency Exemptions. In 2008 and until Brynn no longer derives any benefit from the earned income credit, Curtis shall claim both children as dependents for the purpose of all federal and state income tax returns. After that point, each party shall claim a child.
>
> The parties agree that if either party is unable to use an exemption, the parties may negotiate a transfer of the dependency exemption which maximizes tax benefits.
>
> Each party shall promptly furnish to the other any form required by the Internal Revenue Service for the purpose of assuring to the other party the dependency exemption as herein agreed.

On July 16, 2019—after substantial changes in the relevant tax law—Brynn moved the trial court to equitably allocate the child-related tax benefits. A hearing was held on July 22, 2019, at which neither Curtis nor his counsel was present. The trial court entered an order granting Brynn's motion that same date. On July 25, 2019, Curtis filed an objection, stating that he did not receive Brynn's motion until after the court's ruling. The objection was heard on August 5, 2019,

and on August 7, 2019, the court ruled that its July 22, 2019, order shall remain in full force and effect.  This appeal followed.

## NONCOMPLIANCE WITH RULES OF APPELLATE PROCEDURE

Another panel of our Court has recently addressed the growing problem of noncompliance with the rules of appellate practice.

> This Court is weary of the need to render opinions such as this one, necessitated as they are by the failure of appellate advocates to follow rules of appellate advocacy. In just the last two years, at least one hundred and one (101) Kentucky appellate opinions were rendered in which an attorney's carelessness made appellate rule violations an issue in his or her client's case.  The prodigious number of attorneys appearing in Kentucky's appellate courts lacking the skill, will, or interest in following procedural rules is growing.  In 2005, only two (2) Kentucky opinions addressed appellate rules violations.  In 2010, the number jumped to eleven (11). In 2015, the number rose slightly to fourteen (14).  The average for the last two years is more than three times that.  If this is not a crisis yet, it soon will be if trends do not reverse.

> We will not reiterate all that has been said too many times before on this subject.  If a lawyer is curious about the importance of these procedural rules or the practical reasons for following them, we recommend reading these opinions in chronological order: *Commonwealth v. Roth*, 567 S.W.3d 591 (Ky. 2019); *Koester v. Koester*, 569 S.W.3d 412 (Ky. App. 2019); *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010); *Elwell v. Stone*, 799 S.W.2d 46 (Ky. App. 1990).

> . . . Some rule violations are alone sufficient to justify applying a manifest injustice standard of review

or, worse, striking the brief. CR[1] 76.12(8); *see also Roth*, 567 S.W.3d at 593; *Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 154 (Ky. App. 2012). Other violations are less profound; however, "there is an important purpose behind each of these rules." *Hallis*, 328 S.W.3d at 696 (referring by footnote to the purpose underlying some of the more mundane rules).

*Clark v. Workman*, 604 S.W.3d 616, 616-18 (Ky. App. 2020) (footnotes omitted).

Curtis's brief violates CR 76.12(4)(c)(v), requiring "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Curtis provided no statement of preservation for any of his arguments. Notwithstanding these errors, this Court will not strike the brief and dismiss the appeal.

## STANDARD OF REVIEW

The standard of an appellate court's review of a trial court's findings of fact is well-settled:

> **[F]indings of fact** . . . **may be set aside only if clearly erroneous**. *Hall v. Hall*, [386 S.W.2d 448 (Ky. 1964)]; CR 52.01, 7 Kentucky Practice, Clay 103. We do not find that they are. They are not 'manifestly against the weight of evidence.' *Ingram v. Ingram*, [385 S.W.2d 69 (Ky. 1964)]; *Craddock v. Kaiser*, 280 Ky. 577, 133 S.W.2d 916 [(1939)]. A reversal may not be predicated on mere doubt as to the correctness of the decision. *Buckner v. Buckner*, 295 Ky. 410, 174 S.W.2d 695 [(1943)]. **When the evidence is conflicting, as here, we cannot and will not substitute our decision for the**

---

[1] Kentucky Rules of Civil Procedure.

> **judgment of the chancellor.** *Gates v. Gates*, [412
> S.W.2d 223 (Ky. 1967)]; *Renfro v. Renfro*, [291 S.W.2d
> 46 (Ky. 1956)].

*Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967) (emphasis added). A trial court's findings of fact must be supported by substantial evidence. Substantial evidence is evidence that, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable men. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). After careful review, we hold that the trial court's findings of fact were not clearly erroneous, nor did the trial court abuse its discretion; therefore, we must affirm.

## MODIFICATION OF CHILD TAX DEDUCTIONS

On appeal, Curtis contends the trial court erred by modifying the allocation of child tax deductions, contrary to *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767 (Ky. 2015). In *Smyrichinsky*, the action originated in Indiana where the court issued several orders awarding dependency tax exemptions. After the case transferred to Kentucky, the issue became what action was appropriate for the Kentucky court to take in assigning a dependency tax exemption when modifying the Indiana child support order. *Id.* at 772. To award a tax exemption as part of a support order to a party who does not qualify under the Internal Revenue Code, a trial court is required to articulate sound reasoning as to how the exemption benefits the child. *Id.* at 784. We find *Smyrichinsky* to be

inapplicable to this case for the simple fact that—due to the joint custody arrangement—both parties qualify under the Internal Revenue Code as custodial parents.[2]

In cases of joint custody, both parents are "custodial" parents, though one will be the "primary residential parent." *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008). In Kentucky, a trial court may enter an order requiring the "custodial" parent to sign a written waiver declining to claim the dependency tax exemption, as a matter of equity. *See* 26 U.S.C.[3] § 152(e); *Hart v. Hart*, 774 S.W.2d 455, 457 (Ky. App. 1989). In making such a determination, "a trial court has the authority to allocate the tax exemption between the parties." *Marksberry v. Riley*, 889 S.W.2d 47, 48 (Ky. App. 1994). Nevertheless, a trial court should "be guided in the exercise of its discretion by making an allocation which will best maximize the benefit of the exemption and 'the amount available for the care of

---

[2] Additionally,

> [t]urning to the present case, we recognize that the circuit court did not originally award the dependent-child tax exemptions. Rather, the parties fashioned this allocation as part of their settlement agreement. The Supreme Court in *Adams-Smyrichinsky* specifically stated it was not addressing situations where the parties had reached an agreement as to the exemptions. 467 S.W.3d at 784.

*Hillard v. Keating*, 546 S.W.3d 569, 575 (Ky. App. 2018).

[3] United States Code.

the child[.]'" *Pegler v. Pegler*, 895 S.W.2d 580, 581 (Ky. App. 1995) (citation omitted).

Herein, we can neither say the trial court allocated the child tax exemptions in a manner unreasonable under the circumstances nor that it failed to articulate a sound reason for modifying the prior arrangement. In its August 7, 2019, order, the trial court set out that Brynn provides private school education for the children at her sole cost, along with their primary residence, while Curtis pays child support ($1,213.41 monthly). The trial court further found the prior agreement unconscionable pursuant to KRS[4] 403.180(2) due to recent changes in the federal tax laws which reduced the value of the earned income credit in comparison to the significant increase in the tax deduction. Each parent can now use an exemption for the benefit of a child as generally contemplated by the parties in the prior agreement. Accordingly, we discern no abuse of discretion by the trial court in allocating an exemption to each party to be followed by an alternating child tax exemption when only one child remains eligible to be claimed as a dependent for tax purposes.

**MODIFICATION OF AN AGREED ORDER**

Curtis further argues that the trial court erred in modifying the agreed order, claiming the court exceeded its authority by doing so. However, this

---

[4] Kentucky Revised Statutes.

argument was never presented to the trial court. Only issues fairly brought to the attention of the trial court are adequately preserved for appellate review. *Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012). An appellate court "is without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citations omitted). Consequently, we decline to discuss this issue.

## CONCLUSION

Therefore, for the foregoing reasons, the orders entered by the Jefferson Circuit Court are AFFIRMED.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING: I respectfully dissent. Given the lack of appropriate service of the motion, I believe a full hearing needed to be held after the lack of service was brought to the Jefferson Family Court's attention.

As the majority Opinion notes, Curtis Davis objected to the family court's order granting Brynn Warnock's motion, explaining that he did not timely receive Brynn's motion to reallocate the child-related tax benefits from what existed in the parties' agreed order and, thus, was unable to appear at the hearing

on this issue. Curtis was served by regular mail and explained he did not receive the motion until after the family court had already ruled. Curtis properly objected to this lack of service and the entry of the order granting Brynn's motion where he had no opportunity to appear at the hearing.

Today, it is well-known that the United States mail is unreliable and has delays in delivery. It is entirely probable that Mr. Davis's allegation of failure of notice of this hearing is valid. To set aside and alter an agreement between the parties should require a due process hearing with testimony and examination by each party. Service by regular mail in a post-judgment motion requires yet another analysis as to whether regular mail is authorized for notice. If the parties have established a routine and if no prior post-judgment motions have been filed for a substantial period of time, then I would suggest that certified mail would be more appropriate to notify a party of a motion to completely reverse an agreement between the parties.

The family court should have conducted a *de novo* hearing on Brynn's reallocation motion rather than a summary process when it was informed of the lack of proper service on Curtis. Such a hearing should have included thoroughly exploring whether it had the authority to modify the agreed order.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Michael R. Slaughter
Westport, Kentucky

BRIEF FOR APPELLEE:

Courtney L. Baird
Marcia L. Sparks
Louisville, Kentucky